COUNTY OF MECKLENBURG AND THE BOARD OF COUNTY COMMIS-
SIONERS FOR MECKLENBURG COUNTY v. STERCHI BROTHERS
STORES, INC., A CORPORATION.

(Filed 29 April, 1936.)

1. **Taxation B a—Personalty of nonresidents is taxable by this State when
   such personalty has a taxable situs here.**

   N. C. Code; 7971 (18) (6), does not exempt from *ad valorem* taxes in
   this State personal property owned by nonresidents when such personal
   property has a taxable *situs* in this State, it being the intent of the stat-
   utes construed *in pari materia* to subject all property within the jurisdic-
   tion of the State to *ad valorem* taxation, unless such property is exempt
   from taxation by the Constitution. N. C. Code, 7971 (18), subsec. 10;
   7971 (36); subsec. 1; 7971 (13); Constitution of North Carolina, Art. V,
   sec. 3.

2. **Constitutional Law I b—Taxation of personalty of nonresidents having
   "business situs" in this State does not violate 14th Amendment of
   Federal Constitution.**

   The taxation of personal property of nonresidents by this State when
   such personal property has acquired a taxable *situs* here does not violate
   the provisions of the 14th Amendment of the Federal Constitution, the
   rule that personal property follows the domicile of the owner being sub-
   ject to an exception when such personalty is held in such a manner as to
   create a "business *situs*" for the purpose of taxation.

3. **Taxation B a—Held: Under facts of this case, personalty of nonresi-
   dent had acquired "business situs" in this State for purpose of taxa-
   tion.**

   Defendant, a nonresident corporation operating several stores, and
   having its principal office in another state, maintained one store in this
   State, which sold merchandise for cash or upon installments under con-
   ditional sales contracts. The contracts to pay were collected by the store
   in this State selling the merchandise, and collections therefrom deposited
   here to the credit of the home office, the current expenses of the store
   being paid by its checks on another account furnished by the home office
   out of its general fund. Some of the conditional sales contracts were
   registered in this State, and the laws of this State resorted to, when
   necessary, to enforce collection. *Held:* The conditional sales contracts
   and promises to pay acquired a "business *situs*" here, and are solvent
   credits subject to an *ad valorem* tax in this State.

4. **Taxation C b—Defendant held not entitled to complain of assessment
   of personal property for taxation by plaintiff county.**

   Plaintiff county ascertained the amount of personal property of defend-
   ant nonresident corporation having a "business *situs*" in this State, and
   liable for taxation as solvent credits by the county by ascertaining the
   total assets of the defendant and the percentage of such assets found in
   the county, and allowing the same per cent of its total liabilities to be
   deducted therefrom. Defendant complained that defendant county had
   made its own rule in ascertaining the solvent credits in the county subject
   to taxation in violation of Art. I, sec. 8, of the State Constitution. *Held:*

Defendant failed to list its solvent credits for taxation as required by law, N. C. Code, 7971, 18, subsecs. 6 and 10, in which event it could have deducted its liabilities in the county, N. C. Code, 7971 (47), and defendant was not prejudiced by the assessment of its personal property for taxation as determined by the county.

APPEAL by defendant from *Shaw, Emergency Judge,* at March Term, 1936, of MECKLENBURG. Affirmed.

This is a submission of controversy without action. N. C. Code, 1935 (Michie), sec. 626. Jurat by litigants.

The agreed statement of facts is as follows:

"1. Sterchi Brothers Stores, Inc., is, and was at all times hereinafter mentioned, a corporation duly chartered, organized, and existing under and by virtue of the laws of the State of Delaware, with its main office and principal place of business located in Knoxville, Tennessee.

"2. That Mecklenburg County is a political subdivision of the State of North Carolina, and body corporate. That B. J. Hunter, H. W. Harkey, A. D. Cashion, R. F. Dunn, and A. H. Wearn are the duly elected, qualified, and acting members of the board of commissioners of said county, and as such have the power and authority to assess *ad valorem* taxation of property located in said county lawfully subject to taxation.

"3. That the defendant corporation operates a number of stores in several states, but has no store in the State of Delaware, and that all stores are operated under the direct supervision and control of the Knoxville, Tennessee, office. They also own and operate a store located in the city of Charlotte, Mecklenburg County, North Carolina, for the sale of furniture and other types of merchandise in the nature of home furnishings.

"4. That all of the said merchandise is sold either for cash or for an initial cash payment and a conditional sales contract or agreement to pay for the balance of said purchase price, in which said contract or agreement to pay the debtor agrees to pay in weekly or monthly installments the balance of said purchase price. That the execution of the contracts or agreements to pay is in such manner as to enable the defendant to record said contracts or agreements to pay, some of which are recorded in Mecklenburg County, and some of which are not. The Charlotte store of the defendant sells to purchasers in Mecklenburg and other counties of North Carolina, and also to purchasers who reside in the State of North Carolina. All of these contracts or agreements to pay are retained in the Charlotte office and are collected by the Charlotte office. Where necessary, the laws of the location of the debtor are used to enforce the collection.

"5. That all funds collected, either by cash or on the contracts or agreements to pay by the Charlotte office, are deposited to the account

of Sterchi Brothers Stores, Inc., in the Union National Bank of Char-
lotte, North Carolina, and are subject to withdrawal only by Knoxville
office of the defendant.

"6. Local operating expenses, such as salaries, water, light, telephone,
and heat, but exclusive of rent and the purchase of merchandise, are
paid by checks drawn by the local store on the American Trust Com-
pany, out of an account which is supplied by the home office out of its
general fund. The rent is paid direct by the home office at Knoxville,
and all merchandise is bought and paid for direct by the home office,
including accounts payable incurred for merchandise sent to the local
store, said accounts payable not being entered on the books of the local
unit as an obligation of said local unit.

"7. The defendant pays *ad valorem* taxes on merchandise and cash on
hand each year on the tax listing date.

"8. On the tax return date in 1935, the defendant owned, and held in
physical custody of their Charlotte store, contracts and agreements to
pay as hereinabove referred to in amounts aggregating in excess of
$36,295.

"9. That the defendant did not list for taxation for the year 1935 the
above mentioned contracts and agreements to pay as hereinabove referred
to for *ad valorem* taxes in Mecklenburg County; however, at the time
of said listing, the defendant called attention to the tax listing authori-
ties to said contracts or agreements to pay, but contended that under the
law of North Carolina said contracts or agreements to pay were not
subject to *ad valorem* taxes in Mecklenburg County; that thereafter the
county of Mecklenburg, through its duly elected and qualified board of
county commissioners, listed the said contracts or agreements to pay
hereinbefore referred to and assessed the same for taxation against the
defendant, notwithstanding the objection made at the time by the defend-
ant; that thereafter the defendant gave notice of appeal, filed the neces-
sary bond, all as required by law, and in accordance with the statutes
pertaining thereto, and appealed from the listing and assessment made
by the county of Mecklenburg, acting through its board of county com-
missioners and the Board of Equalization and Review in connection with
the said contracts or agreements to pay to the Superior Court of Meck-
lenburg County, North Carolina.

"10. The contracts or agreements to pay are not listed as such for
*ad valorem* taxes in the State of Tennessee, or elsewhere, but the State
of Tennessee has a capital stock tax, which defendant contends taxes
these accounts indirectly as part of the assets back of the capital stock.

"11. It is agreed that the amount of $32,295 is net solvent credits,
which the plaintiff seeks to tax, was arrived at as follows: The tax
supervisor ascertained the total assets of the defendant and the per-
centage of such assets in Mecklenburg County; the defendant was

allowed as deductions against solvent credits the same percentage of its total liabilities as its assets in Mecklenburg County bore to the total assets of the defendant.

"12. It is stipulated and agreed by and between the parties to this action that all legal formalities have been complied with and that this case is properly before the court for adjudication.

### "CONTENTIONS OF THE PARTIES.

"1. Sterchi Brothers Stores, Inc., contends that the aforesaid contracts or agreements to pay are not subject to *ad valorem* taxation in Mecklenburg County, North Carolina.

"2. Mecklenburg County contends that the above mentioned contracts or agreements to pay are subject to *ad valorem* taxation in Mecklenburg County, North Carolina.

H. E. FISHER,
J. CLYDE STANCILL,
*Attorneys for Mecklenburg County and*
*Board of County Commissioners.*
E. A. HILKER,
*Attorney for Sterchi Brothers Stores, Incorporated."*

The judgment of the court below is as follows: "This cause coming on to be heard before his Honor, Thomas J. Shaw, judge holding extra courts in Charlotte, North Carolina, and being heard on the agreed statement of facts, as appears in the record in this cause, and the court being of the opinion that the solvent credits of $36,295 in question, as set out in the agreed statement of facts, are subject to *ad valorem* taxation in Mecklenburg County, N. C. It is therefore ordered, adjudged, and decreed that the action of the board of county commissioners of Mecklenburg County in listing said contracts or agreements to pay and assessing same for taxation against the defendant be and is hereby affirmed. This 25 March, 1936. Thos. J. Shaw, Judge presiding."

The defendant excepted and assigned error to the judgment as signed, and appealed to the Supreme Court.

*J. Clyde Stancill and Henry E. Fisher for plaintiffs.*
*E. A. Hilker for defendant.*

CLARKSON, J. In the agreed statement of facts (3) is the following: "That the defendant corporation operates a number of stores in several states, but has no store in the State of Delaware, and that all stores are operated under the direct supervision and control of the Knoxville, Tennessee, office. They also own and operate a store located in the city of Charlotte, Mecklenburg County, North Carolina, for the sale of furniture and other types of merchandise in the nature of home furnishings." The defendant is a Delaware corporation.

The merchandise from the Charlotte store is sold to purchasers in Mecklenburg County and other counties in North and South Carolina, for either cash or partly cash and the balance in weekly or monthly installments, under conditional sales contracts or agreements, some of which are recorded. These contracts to pay are retained and collected by the Charlotte office and, when necessary, the laws where the debtor resides are resorted to to enforce collection. The funds are deposited in defendant's name in a Charlotte bank and subject to withdrawal by the Knoxville office. Local operating expenses, exclusive of rent and the purchase of merchandise, are paid by check drawn by the local store on a Charlotte Bank, out of an account which is supplied by the Knoxville office out of its general fund. The Knoxville office pays the rent and furnishes the merchandise, this is not entered on the books of the local unit as an obligation. The contracts or agreements are not listed for *ad valorem* tax in Tennessee or elsewhere, but the State of Tennessee has a capital stock tax which defendant contends taxes these accounts indirectly as part of the assets back of the capital stock. The defendant pays *ad valorem* taxes on merchandise and cash on hand each year on the tax listing date. *Facts:* (8) "On the tax return date in 1935 the defendant owned and held in physical custody of their Charlotte store contracts and agreements to pay as hereinbefore referred to in amounts aggregating in excess of $36,295."

Plaintiffs, the governing authorities of Mecklenburg County, N. C., listed these contracts or agreements and assessed the same for taxation against the defendant. The defendant made objection, in conformity to law, and appealed to the Superior Court of Mecklenburg County, N. C. The court below held that these solvent credits were subject to an *ad valorem* tax in North Carolina, and in this we see no error.

Does such a tax levy contravene the State Constitution and the 14th Amendment of the Federal Constitution? We think not.

As a general rule, the principle *"mobilia personam sequuntur"* governs the *situs* of tangible property for the purpose of taxation. In other words, movables follow the law of the person. There is a well recognized and just exception to this rule where there is a "business *situs*" of intangibles separate and apart from the domicile of the owner. When the manner of doing business establishes this *situs,* the intangibles are taxable, and this does not contravene Art. XIV, sec. 1, of the Federal Constitution (in part), as follows: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

"Business *situs*—A *situs* acquired for tax purposes by one who has carried on a business in the state more or less permanent in its nature.

*Endicott, Johnson & Co. v. Multnomah County,* 190 P., 1109, 1111, 96 Or., 679. A *situs* arising when notes, mortgages, tax sale certificates and the like are brought into the state for something more than a temporary purpose, and are devoted to some business use there, and thus become incorporated with the property of the state for revenue purposes. *Honest v. Gann,* 244 P., 233, 235, 120 Kan., 365; *Lockwood v. Blodgett,* 138 A., 520, 525, 106 Conn., 525." Black's Law Dictionary (3d Ed.), p. 261.

In Cooley Taxation, Vol. 2 (4th Ed.), sec. 465 (pp. 1031-37), speaking to the subject, it is said: "Business *situs*—In General. While 'the undoubted rule is that, for the purposes of taxation, a debt is property at the residence or domicile of the creditor,' it is also true that a debt may acquire a *situs* elsewhere. 'Business *situs*' has come to be a well recognized term in the law of taxation. Primarily, it is an exception to the rule that the *situs* of intangible personal property is at the domicile of the owner, so as to make property which has acquired a 'business *situs*' in a state other than the domicile of the owner taxable in such state. The rule is settled that credits belonging to a nonresident may acquire a business *situs* so as to be taxable; but just what will constitute a business *situs* is not susceptible of precise definition. This 'business *situs*' means, it would seem, what the words indicate, *i. e.,* a *situs* in another state where a nonresident is doing business through an agent, manager, or the like, in which business and as part thereof business credits, such as open accounts, notes, mortgages, deposits in bank, etc., are used and come within the protection of the state. The question arises in connection with various business transactions conducted by a person or corporation, generally through an agent, in another state; but the most common application of the rule is where a resident of one state has an agent in another state who loans money of the nonresident, more or less as a regular business, and takes care of the collections and reinvestments, in which case the notes, mortgages, etc., taken by the agent are held to be subject to taxation although the owner is a nonresident. The rule of business *situs* has been applied also to credits arising from loans made by agents of foreign insurance companies; credits arising from premiums due in connection with the local business of an insurance company; credits arising from a business in the state as a branch of the business of a foreign corporation or partnership; a branch brokerage business conducted through a local agent; and the sale of lands through agents."

In *Redmond v. Commissioners,* 87 N. C., 122, we find: *Facts:* "The plaintiffs are domiciled in the State of New York, but were owners of lands lying in several of the counties of this State, which had been sold by their agent, who keeps an office in the town of Rutherfordton in this

State, and had power to sell and execute covenants for title and to collect the money. The covenants to pay the purchase moneys are solvent only because of the fact that the title to the lands is retained as a security. These covenants for the purchase money amount to many thousands of dollars, and are all kept in the office of said agent at Rutherfordton; and the single question presented in the record is, whether they are liable to a State, county, and corporation tax." At p. 123 it is said: "The theory of taxation is, that the right to tax is derived from the protection afforded to the subject upon which it is imposed. . . . The actual *situs* and control of the property within this State, and the fact that it enjoys the protection of the laws here, are conditions which subject it to taxation here; and the legal fiction, which is sometimes for other purposes indulged, that it is deemed to follow the person of the owner, and to be present at the place of his domicile, has no application. In such case, the maxim *mobilia personam sequuntur* gives way to the other maxim in *fictione juris semper æquitas existat."* This Court held in the above case that the intangibles were taxable, citing many cases in other jurisdictions. This decision was rendered in 1882 and has been the unquestioned law of this State ever since. 76 American Law Reports (Anno.), p. 820. *Ransom v. Board of Comrs. of Town of Weldon,* 194 N. C., 237.

Cooley, *supra,* cites a wealth of authorities to support the text, both state and Federal authorities: *New Orleans v. Stempel,* 175 U. S., 309, 22 L. Ed., 174; *Bristol v. Washington County,* 177 U. S., 133, 44 L. Ed., 701; *State Board of Assessors v. Comptoir National D'Escompte,* 191 U. S., 388, 48 L. Ed., 232; *Metropolitan Life Ins. Co. v. New Orleans,* 205 U. S., 395, 51 L. Ed., 853.

The defendant contends that *Farmers' Loan & Trust Co. v. Minnesota,* 280 U. S., 204, 74 L. Ed., 371, is authority for its contention. We think not. On the contrary, we find that opinion an affirmation of the above "business *situs*" principle. At page 218 it is said: *"New Orleans v. Stempel, supra, Bristol v. Washington County, supra,* and *Liverpool & L. & G. Ins. Co. v. Board of Assessors,* 221 U. S., 346, 55 L. Ed., 762, recognize the principle that choses in action may acquire a *situs* for taxation other than at the domicile of their owner if they have become integral parts of some local business. The present record gives no occasion for us to inquire whether such securities can be taxed a second time at the owner's domicile." There are numerous decisions in different states that have adopted the "business *situs*" of intangibles for taxation.

We think the case of *Wheeling Steel Corporation v. Fred L. Fox, Tax Comr. of West Va.,* delivered by *Chief Justice Hughes* 18 May, 1936, fully sustains the position we have taken, and the Court has added same to the opinion after being handed down, as the matter involves a Federal question.

Art. V, sec. 3, of the N. C. Const., provides: "Laws shall be passed taxing, by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise; and, also, all real and personal property, according to its true value in money," etc. In accordance with this constitutional mandate, the North Carolina Legislature has enacted the following statutes: N. C. Code, 1935 (Michie), sec. 7971 (13)—"All property, real and personal, within jurisdiction of the State, not especially exempted, shall be subject to taxation." Sec. 7971 (18)— "Personal property shall include: (10) All other personal property not herein enumerated and not expressly exempted by law."

In *Latta v. Jenkins,* 200 N. C., 255 (258), it is said: "By virtue of the provisions of section 3 of Article V of the Constitution of North Carolina, all property, real and personal, in this State is subject to taxation, in accordance with a uniform rule, under laws which the General Assembly is required by the Constitution to enact, without regard to its ownership, and without regard to the purposes for which specific property is held."

In *Town of Benson v. County of Johnston,* 209 N. C., 751, it is declared: "Taxation is the rule and exemption the exception. The rule has repeatedly been laid down by this Court, the exemptions from taxation are to be strictly construed," citing authorities.

Defendant cites section 7971 (18) (6): "All notes, bonds, accounts receivable, money on deposit, postal savings, securities, and other credits of every kind belonging to citizens of this State over and above the amounts respectively owed by them, whether such indebtedness is due them from individuals or from corporations, public or private, and whether such debtors reside within or without the State." It contends that the tax is limited "to citizens of this State"—"whether such debtors reside within or without the State," but section 7971 (18) (10) declares, "All other personal property not herein enumerated and not expressly exempted by law."

Section 7971 (36) (1)—(How to list property), in part, says: "Every person owning property, real or personal, is required to list and shall make out, sign, and deliver to the assistant supervisor, list taker, or assessor a statement, verified by his oath, of all the real and personal property, money, credits, investments in bonds, annuities, or other things of value," etc. The above section distinctly says, *"Every person owning property, real or personal,"* etc. Further: "Which was in the possession or control of such person or persons on the 1st of April, either as owner or holder thereof, or as . . . agent, factor, or in any other capacity." These sections, construed *in pari materia,* clearly include intangible property to be the subject of taxation under the laws of this State.

Defendant contends that the *Redmond case, supra,* is based on a dissimilar revenue statute from the present ones, and contends that the 1879 law, under which the decision is based, "phraseology of 1879 is all inclusive." From the present statutes, taken *in pari materia,* we think is all inclusive, and the position taken by defendant is at least a "distinction without a difference."

In the agreed statement of facts is the following: "11. It is agreed that the amount of $36,295 is net solvent credits, which the plaintiff seeks to tax, was arrived at as follows: The tax supervisor ascertained the total assets of the defendant and the percentage of such assets in Mecklenburg County; the defendant was allowed as deductions against solvent credits the same percentage of its total liabilities as its assets in Mecklenburg County bore to the total assets of the defendant." The defendant contends that the plaintiffs made a rule of their own, contrary to the Constitution of North Carolina, Art. I, sec. 8, and the statute, in taxing defendant's property. If this was done, we cannot see how defendant can complain. Defendant, under section 7971 (18) (6) and (10), and other sections referred to, was required to return all solvent credits. This was taxable. The defendant was entitled as against the solvent credits to deduct liabilities, *bona fide* indebtedness. Sec. 7971 (47). *Hardware Mutual Fire Ins. Co. v. Stinson et al., ante,* 69.

The defendant denied that it has such a "business *situs*" in Mecklenburg County, N. C., that was subject to taxation. If it had made its returns in Mecklenburg County, N. C., as it was required to do by law, it could have deducted its liabilities. We can see no prejudicial injury to defendant from the assessment as made by plaintiffs. We think from the agreed case that this was such a "business *situs*" as was subject to tax by the plaintiffs, the taxing authorities. If the defendant was allowed to escape tax in this jurisdiction, under the facts and circumstances of this case, a foreign corporation, by establishing a "business *situs,*" as in the present case, would have a special privilege over other installment stores of like nature located and doing business in Mecklenburg County, N. C. Defendant could undersell them at least to the amount it escapes taxation on intangibles—which the other installment stores have to pay under the law.

We think the tax valid, and the intangibles are taxable under the Constitution of North Carolina and the North Carolina Revenue Act. The tax does not contravene the Constitution of North Carolina, Art. V, sec. 3; Art. I, sec. 8, nor the 14th Amendment to the Constitution of the United States.

For the reasons given, the judgment of the court below is
Affirmed.